[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14317

_____

ANDREZ MARQUEZ,
On behalf of himself and all others similarly situated,
including but not limited to, Clarissa Morejon,
Morgan Howard, Sophia Feliciano, James Bromley,
and Jeff Barr,
CLARISSA MOREJON,
MORGAN HOWARD,
SOPHIA FELICIANO,
JAMES BROMLEY, et al.,

                                         Plaintiffs-Appellants,

*versus*

AMAZON.COM, INC.,

2                    Opinion of the Court                    21-14317

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80392-DMM

_____

Before BRANCH and LUCK, Circuit Judges, and SANDS,* District Judge.

BRANCH, Circuit Judge:

At the start of the COVID-19 pandemic, Amazon.com, Inc. ("Amazon") stopped providing "Rapid Delivery"[1] to Amazon Prime ("Prime") subscribers. Because Prime subscribers were not notified of the suspension and continued to pay full price for their memberships, Andrez Marquez and other plaintiffs brought a putative class action against Amazon alleging breach of contract, breach of the covenant of good faith and fair dealing, violation of the Washington Consumer Protection Act ("WCPA"), and unjust enrichment. The district court granted Amazon's motion to

_____

* Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

[1] "Rapid Delivery" is not a contract term. The parties and the district court, however, used the term to describe the enhanced shipping options available to Prime subscribers. We follow suit.

dismiss the First Amended Complaint for failure to state a claim with prejudice because it found that Amazon did not have a duty to provide unqualified Rapid Delivery to Prime subscribers. After careful review, and with the benefit of oral argument, we affirm.

## I.      Background

### A. Facts and Contract Terms

Prime is a fee-based subscription service. Prime subscribers receive several benefits not available to other Amazon customers, including Rapid Delivery, which is two-hour, same-day, one-day, or two-day shipping at no additional cost for certain Prime-eligible items purchased from Amazon's online marketplace. From the start of the COVID-19 pandemic in March 2020 to at least May 2020, Amazon suspended Rapid Delivery without notifying Prime members. Plaintiffs alleged that, rather than providing the full benefit of Prime membership to its subscribers, Amazon instead "focused on profits from consumer grocery and pharmacy spending to compete with major pharmacy and grocery chains as well as keep[] up with significantly increased demand."[2]

As Prime subscribers, each plaintiff agreed to identical contracts with Amazon. The contracts included the Amazon Prime Terms and Conditions ("Terms & Conditions") which, in

---

[2] Amazon did not stop collecting subscription fees from existing Prime subscribers during its suspension of Rapid Delivery. Rather, during this time, Amazon sold new Prime subscriptions, listed goods as Prime-eligible, and represented that it would provide Rapid Delivery.

turn, incorporated provisions from several linked documents. Specifically, in the first paragraph, the Terms & Conditions stated:

> Please note that your use of the Amazon.com website and Prime membership are also governed by the agreements listed and linked to below, as well as other applicable terms, conditions, limitations and requirements on the Amazon.com website, *all of which . . . are incorporated into these Terms*. If you sign up for a Prime membership, you accept these terms, conditions, limitations and requirements.

There were multiple hyperlinks immediately below this section of text. In pertinent part, the first hyperlink incorporated the "Conditions of Use" and the second incorporated the "Amazon.com Privacy Notice."

Within the Terms & Conditions was a bolded section entitled "Shipping Benefits and Eligible Purchases." This "Shipping Benefits and Eligible Purchases" section included a hyperlink entitled "Prime shipping benefits" that linked to a webpage entitled "Amazon Prime Shipping Benefits – Eligible Items & Addresses." The "Amazon Prime Shipping Benefits – Eligible Items & Addresses" webpage also linked to another webpage entitled "Amazon Prime Shipping Benefits." The "Amazon Prime Shipping Benefits" webpage detailed shipping speeds, catalogued "eligible items," and provided the prices that Prime members would have to pay for those services.

With the structure of the contract in mind, we now turn to its operative text.

First, the Terms & Conditions provided that: "Prime shipping benefits depend[ed] upon inventory availability, order deadlines, and in some cases the shipping address."  Second, the Terms & Conditions provided: "[Amazon] may exclude products with special shipping characteristics at [its] discretion."  Third, the Terms & Conditions provided:

> From time to time, Amazon may choose in its sole discretion to add or remove Prime membership benefits . . . [Amazon] may in [its] discretion change . . . any aspect of Prime membership, without notice . . . YOUR CONTINUED MEMBERSHIP AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES.

Additionally, the Conditions of Use provided (in all caps):

> AMAZON SERVICES AND ALL INFORMATION, CONTENT, MATERIALS, PRODUCTS (INCLUDING SOFTWARE) AND OTHER SERVICES INCLUDED OR OTHERWISE MADE AVAILABLE TO YOU THROUGH THE AMAZON SERVICES ARE PROVIDED BY AMAZON ON AN "AS IS" AND "AS AVAILABLE" BASIS . . . .

The Conditions of Use also contained a choice-of-law clause selecting Washington law.[3]

---

[3] The choice-of-law provision provided the following—"By using any Amazon Service, you agree that . . . the laws of the state of Washington, without regard

6                    Opinion of the Court                    21-14317

### B.  Procedural History

Plaintiffs were Prime subscribers between March 2020 and May 2020 who—with one exception[4]—periodically placed orders for Rapid Delivery.  Plaintiffs filed this case in Florida state court.  Amazon removed to the United States District Court for the Southern District of Florida based on diversity jurisdiction.

Plaintiffs then filed their First Amended Complaint, which asserted claims for breach of contract (Claim I), breach of the covenant of good faith and fair dealing (Claim II), violation of the WCPA (Claim III), and unjust enrichment (Claim IV).  Importantly, plaintiffs did not plead the obvious: Amazon's suspension of Rapid Delivery was in response to the COVID-19 pandemic.[5]

---

to principles of conflict of laws, will govern these Conditions of Use and any dispute of any sort that might arise between you and Amazon."

[4] For nine of the ten named plaintiffs, the First Amended Complaint alleges that "[f]rom time to time [he or she] placed one or more orders on Amazon Prime for Rapid Delivery."  For the other named plaintiff, however, the only allegation is that he "utilized Rapid Delivery" without any allegation that he actually placed orders for Rapid Delivery.

[5] Presumably, plaintiffs omitted reference to COVID-19 in their complaint to try to prevent the district court from considering COVID-19's effect when assessing the plausibility of their claims.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This ruse is creative lawyering, but it does not work.  While "[a]nalysis of a 12(b)(6) motion [to dismiss] is limited primarily to the face of the complaint and attachments thereto," *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)), the Supreme Court has

Amazon moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the district court dismissed all claims with prejudice for failure to state a claim. The district court held that, on the breach of contract claim, "Plaintiffs [did] not ple[a]d facts that establish[ed] that [Amazon] owed a duty to provide [Prime] subscribers with unqualified rapid delivery shipping." That is, without a promise to provide unqualified Rapid Delivery, Amazon necessarily did not breach its contract by suspending that service. Relatedly, the district court found that the contract was neither procedurally nor substantively unconscionable, and it specifically "note[d] the irony" of plaintiffs' argument that prioritizing the shipment of essential goods during the COVID-19 pandemic was unconscionable because Amazon "exercised responsible business judgment during an unprecedented global public health crisis."[6] Through reasoning similar to its breach of contract analysis, the

---

instructed courts that the plausibility determination is "context-specific" and "requires the reviewing court to draw on its *judicial experience and common sense,*" *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (emphasis added); *see also Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1062 n.5 (11th Cir. 2010). The effect of COVID-19 in early 2020 was properly considered as part of the district court's "judicial experience and common sense." *Iqbal,* 556 U.S. at 679. As such, plaintiffs' argument that the district court—and our court—cannot consider the effect of COVID-19 because it is not mentioned in their complaint necessarily fails.

[6] The district court advanced similar reasoning when it considered the "public interest impact" element of the WCPA claim: "In addition, [d]efendant did not violate the public interest—indeed it made a good faith effort to *serve* the public interest—when it prioritized the shipment of essential goods during the onset of the pandemic."

district court found that Claim II (breach of good faith and fair dealing) and Claim III (violation of the WCPA) also failed. Finally, the district court held that Claim IV (unjust enrichment) failed because there was a contract between the parties; and, under Washington law, unjust enrichment applies only when there is no contractual relationship.

Plaintiffs timely appealed.

## II.    Standard of Review

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quoting *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008)). But "[o]ur duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations," because "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007).

After *Twombly* and *Iqbal*, the standard to survive a 12(b)(6) motion to dismiss for failure to state a claim is "plausibility." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am.*

*Dental*, 605 F.3d at 1289 (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires plaintiffs to provide more than "naked assertions devoid of further factual enhancement," mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* (quotations omitted & alterations adopted). Ultimately, "[a] complaint may be dismissed for failure to state a claim when, ignoring any mere conclusory statements, the remaining allegations do not plausibly suggest that the defendant is liable." *Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1240 n.4 (11th Cir. 2020) (quotations omitted).

"[W]e may affirm [the district court's] judgment on any ground that finds support in the record." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) (quotations omitted).

## III.    Discussion

To begin, we assume that Amazon's contract with Prime subscribers included a promise to provide Rapid Delivery.[7]

---

[7] We note that the district court did not employ this assumption, and the assumption is by no means a given. On the one hand, the Amazon Prime Shipping Benefits page stated: "Your Amazon Prime membership includes a variety of shipping benefits, including several shipping options if you need to expedite your delivery." And this same page included a table showing the expedited shipping speeds available to Prime members and the associated costs (or lack thereof) for those services. These facts, along with plaintiffs' allegations, suggest that Rapid Delivery was contractually promised. On the

Proceeding from this assumption, we find that plaintiffs have not stated a claim for breach of contract because Amazon had the right to limit Rapid Delivery. We also hold that Amazon's significant discretionary authority over Rapid Delivery does not render the contract unconscionable. Then, we conclude that plaintiffs have not sufficiently alleged that Amazon breached its duty of good faith or violated the WCPA. Finally, because plaintiffs pleaded a contractual relationship in their unjust enrichment count, we hold that their unjust enrichment claim fails. In sum, we affirm the district court's judgment on each claim, although we reach our conclusions for different reasons.

### A. *Breach of Contract and Unconscionability*

#### 1.    Breach of Contract

Plaintiffs allege that Amazon breached its contract with plaintiffs by suspending Rapid Delivery from at least March 2020 to at least May 2020. The district court found that Amazon had no duty to provide unqualified Rapid Delivery and, as such, it did not breach its contract by suspending that service.

---

other hand, however, many facts—such as the contractual terms that gave Amazon "sole discretion" over Prime membership benefits and indicated that Amazon provided its services on an "AS IS" and "AS AVAILABLE" basis—indicate that Rapid Delivery was not contractually promised. In the end, because we conclude that *even if* Rapid Delivery was contractually promised, Amazon *still* did not breach its contract, breach the covenant of good faith, or violate the WCPA, we assume that Rapid Delivery was promised.

We take a different path.  We assume that Amazon had a duty to provide Rapid Delivery, but still conclude that Amazon did not breach its contract because it had contractual authority to suspend Rapid Delivery.

Under Washington law,[8] "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995); *see also Baldwin v. Silver*, 269 P.3d 284, 289 (Wash. Ct. App. 2011) ("Breach of contract . . . claims depend on proof of four common elements: duty, breach, causation, and damages.").  The contract language is given its "ordinary, usual, and popular meaning," *Myers v. State*, 218 P.3d 241, 243 (Wash. Ct. App. 2009), and courts must "give[] effect to all the contract's provisions," *Nishikawa v. U.S. Eagle High, LLC*, 158 P.3d 1265, 1268 (Wash. Ct. App. 2007).  And, of course, if an action is permitted by the contract, the performance of that action is not a breach.  *See Myers*, 218 P.3d at 244 (upholding the trial court's dismissal of a breach of contract claim in a wrongful termination dispute when the "contract grant[ed] [defendant] broad authority to terminate the contract").

The contract repeatedly qualified the rights of Prime subscribers and gave Amazon the authority to modify Prime benefits—including Rapid Delivery.  In particular, we focus on two

---

[8] The parties agree that we must apply Washington law in light of the choice-of-law clause in their contract.

terms that demonstrate Amazon did not breach its contract with plaintiffs.

First, the Terms & Conditions provided that "Amazon may choose . . . to add or remove Prime membership benefits." Second, the Conditions of Use reiterated that "AMAZON SERVICES . . . ARE PROVIDED BY AMAZON ON AN 'AS IS' AND 'AS AVAILABLE' BASIS."[9]  Standing together, these terms decide this claim.  It is undisputable that the contract provides Amazon with the right to suspend Rapid Delivery.  We do not belabor the point because the ultimate analysis is rather simple: Amazon had the contractual right to suspend Rapid Delivery, so it did not breach its contract with plaintiffs by suspending Rapid Delivery.[10]  *Id.*

---

[9] Amazon also points to the term providing that "shipping benefits *depend upon* inventory availability, order deadlines, and in some cases the shipping address" to show that plaintiffs did not have an unqualified right to Rapid Delivery. Plaintiffs respond that this provision is inapposite because Amazon did not suspend Rapid Delivery for the above-listed reasons.  We need not address this specific dispute because we conclude that other contract terms clearly provide Amazon the right to suspend Rapid Delivery and, therefore, it did not breach its contract with plaintiffs.

[10] It bears repeating that plaintiffs were free to cancel their Prime memberships at any time.  If they chose not to cancel, however, their "continued membership . . . constitute[d] . . . acceptance of the[] changes."  This provision reinforces our conclusion that there was no breach.  That is, once plaintiffs accepted the new terms, they lost their claim that Amazon breached the original terms.

Plaintiffs argue that we cannot read the contractual discretion so broadly because we must give "reasonable, fair, just, and effective meaning to all manifestations of intention" when interpreting a contract. *See Spokane Sch. Dist. No. 81 v. Spokane Educ. Ass'n*, 331 P.3d 60, 67 (Wash. Ct. App. 2014). We conclude that this statement of law actually cuts against plaintiffs' argument. That is, the contract's express intention is to give Amazon broad authority over Rapid Delivery, and it is "fair" and "reasonable" to read the contract that way. *Id.*

Plaintiffs also argue that if Amazon had such broad discretion over Rapid Delivery—which, in their estimation, is the "core" benefit of Prime membership—such authority would render the contract "illusory." "In Washington, a contract is illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract." *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1176 (W.D. Wash. 2014). While this opinion has focused primarily on Rapid Delivery, there are other Prime benefits and services (such as streaming access for movies, television shows, and music) that were not suspended. Thus, the contract was not "completely illusory." *Id.*

### 2.     Unconscionability

Plaintiffs also contend that the contract is both procedurally and substantively unconscionable and that the district court erred in ruling otherwise. The district court found that the contract was not procedurally unconscionable because "[p]laintiffs have not

offered any facts that suggest they lacked a reasonable choice in deciding whether or not to subscribe to [Prime]," and was not substantively unconscionable because Amazon's right to modify the contract—which plaintiffs could have terminated at any time—did not meet the high threshold for substantive unconscionability. Ignoring the inherent tension in asserting a claim for breach of contract (*i.e.*, there is an enforceable contract that has been breached) as well as a claim for unconscionability (*i.e.*, this is an unenforceable contract), plaintiffs' argument fails.

"In Washington, either substantive *or* procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). "The burden of proving that a contract or contract clause is unconscionable lies upon the party attacking it." *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Wash. Ct. App. 2001).

Plaintiffs allege that the contract is procedurally unconscionable because "it was part of an adhesion contract, was buried in a maze of fine print, and plaintiffs lacked a reasonable opportunity to understand the provision[s]." Procedural unconscionability is the lack of a meaningful choice, "considering all the circumstances surrounding the transaction including (1) the manner in which the contract was entered, (2) whether each party had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms [were] hidden in a maze of fine print." *Id.* (alterations adopted & quotations omitted). Under the first element, to determine whether a contract is an

adhesion contract, we consider: "(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties." *Zuver v. Airtouch Commc'ns., Inc.*, 103 P.3d 753, 760 (Wash. 2004) (quoting *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245, 248 (Wash. 1993)) (quotations omitted). Even if a contract is an adhesion contract, that fact alone is not determinative. *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 37 (Wash. Ct. App. 2015) ("The fact that a contract is an adhesion contract is relevant but not determinative."). Similarly, "the fact that unequal bargaining power exists will not, standing alone, justify a finding of procedural unconscionability." *Zuver*, 103 P.3d at 761.

Plaintiffs are correct that the contract was an adhesion contract. *See id.* The contract was a "standard form printed contract," prepared by Amazon, and plaintiffs have considerably less bargaining power than Amazon. *See id.* This finding, however, helps plaintiffs with only the first of the three elements of procedural unconscionability. *See Romney*, 349 P.3d at 37.

Plaintiffs cannot satisfy their burden on the remaining elements of procedural unconscionability. On the second element (reasonable opportunity to understand the terms of the contract), plaintiffs offer no explanation as to how their opportunity to understand the contract was inhibited. As addressed below, the terms were clearly laid out and there is no allegation (or evidence)

that plaintiffs were under time pressure that affected their opportunity to read the contract. Plaintiffs suggest that they "lacked a reasonable opportunity . . . because [the provision allowing Amazon to suspend Rapid Delivery] directly conflicts with the actual core benefit offered: Rapid Delivery," but this argument misses the mark. For one, this argument does not address plaintiffs' *opportunity* to understand the contract in any way. And, in any event, Amazon Prime membership included other "core" benefits such as streaming access for movies, television shows, and music which were unaffected by the suspension of Rapid Delivery.

On the third element (hidden terms), despite plaintiffs' claim that the terms were buried in a maze of fine print, the evidence again favors Amazon. While there were several hyperlinks between different documents, the pertinent provisions were often in prominent places under clearly labeled subheadings, written in clear language, and/or emphasized in all caps.

In sum, while plaintiffs have plausibly alleged that the contract was an adhesion contract, they have not carried their burden of alleging the remaining elements of procedural unconscionability. *See Tjart*, 28 P.3d at 830.

Plaintiffs also allege that the contract is "substantively unconscionable because it purported to confer on Amazon unfettered discretion to unilaterally modify the contract." "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh[.]"

*Adler v. Fred Lind Manor*, 103 P.3d 773, 781 (Wash. 2004). "[T]erms sometimes used to define substantive unconscionability" include "[s]hocking to the conscience, monstrously harsh, and exceedingly calloused." *Id.* (quotations omitted). "[U]nilateral change-in-terms provision[s]" do not render a contract substantively unconscionable unless the contract is completely illusory, which occurs only when the contract "lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract." *Ekin*, 84 F. Supp. 3d at 1176; *see also Associated Petroleum Prods., Inc. v. Nw. Cascade, Inc.*, 203 P.3d 1077, 1080 (Wash. Ct. App. 2009) ("A party to a terminable at will contract can unilaterally modify the contract because, in doing so, the party is simply terminating the old contract and offering a new one.").

Plaintiffs cannot satisfy this demanding standard. Under the contract, Amazon had authority to suspend certain Prime benefits, but the terms were far from "monstrously harsh" or "shock[ing] [to] the conscience." *Adler*, 103 P.3d at 781. Instead, the terms provided the benefits of Prime, described Amazon's authority to alter those benefits, and gave plaintiffs the option to cancel their Prime membership *at any time*.

In the end, Amazon's contractual discretion was substantial, but the contract was not procedurally or substantively unconscionable under Washington law.[11]  *See id.*

---

[11] Because we find that the provisions allowing Amazon to suspend Rapid Delivery are not unconscionable, we do not address plaintiffs' argument that

B. *Breach of Duty of Good Faith and Fair Dealing*

Plaintiffs argue that because the contract gave Amazon significant discretionary authority, it was required—under Washington law—to operate according to the duty of good faith and fair dealing. The district court held that Amazon had no duty to provide Rapid Delivery and, therefore, plaintiffs did not show that "there [was] anything that [Amazon] . . . failed to perform in good faith." Again, we do not follow the district court's approach to duty. Nonetheless, after analyzing the contract's terms and comparing them with Washington law, we find that plaintiffs have not sufficiently alleged that Amazon violated the duty of good faith and fair dealing.

"Under Washington law, there is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014) (quotations, alterations, and citations omitted). The covenant "requires only that the parties perform in good faith the obligations imposed by their agreement," and does not "inject substantive terms into the parties' contract." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (quotations omitted); *Myers*, 218 P.3d at 244 ("[C]ovenants of good faith . . . do not trump express terms or unambiguous rights in a contract."). Critically, however, "if a contract gives a party

_____

the unconscionable portions should be severed from the rest of the still-operative contract.

unconditional authority to determine a term, there is no duty of good faith and fair dealing." *Rekhter*, 323 P.3d at 1044.

Plaintiffs are correct on one point: Amazon had substantial discretion under the contract. Under *Rekhter*, however, unconditional authority to determine a term effectively cancels the duty of good faith and fair dealing. *Id.* Per the terms of the contract, Amazon "may choose in its *sole discretion* to add or remove Prime membership benefits," which is the quintessential case of a "contract [that] gives a party unconditional authority." Accordingly, we must find that "there is no duty of good faith and fair dealing" under Washington law. *Id.* Further, the contract specified that Prime services were provided on an "AS IS" and "AS AVAILABLE" basis and it notified plaintiffs that if they disagreed with any updated terms they were required to "cancel [their] memberships." Amazon did not breach the duty of good faith and fair dealing because it was non-existent in this instance.[12]

### C. *Violation of WCPA*

We turn now to plaintiffs' argument that Amazon violated a Washington state statute—the WCPA—by engaging in deceptive practices. Wash. Rev. Code Ann. §§ 19.86.010–19.86.920. The

---

[12] Plaintiffs argue that the district court erred in analyzing the duty of good faith because it rooted its analysis in the fact that "no contract provision imposed on Amazon a duty to provide Rapid Delivery." This argument does not affect our analysis because (1) we have analyzed duty differently than the district court and (2) it would not change Washington law which gets rid of the duty of good faith in this circumstance.

district court held that plaintiffs did not allege facts showing that Amazon engaged in an unfair or deceptive practice.

The WCPA allows out-of-state plaintiffs to sue Washington corporations for "deceptive acts that directly or indirectly affect the people of Washington." *Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 592 (Wash. 2015). Plaintiffs must establish five elements to prevail in a WCPA suit: "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; [that has a] (3) public interest impact; [that results in] (4) [an] injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986); *see also* Wash. Rev. Code Ann. §§ 19.86.010–19.86.920. Our analysis leads inescapably to the conclusion that the district court correctly dismissed this claim.

### 1.    Unfair or Deceptive Act or Practice

Under this element, the touchstone is whether a representation was "likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (quotations omitted). "A plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 719 P.2d at 535. "The capacity . . . to deceive is determined with reference to the least sophisticated consumers among us."[13]

---

[13] Amazon contends that the "least sophisticated" standard does not apply to the WCPA. This argument, however, rests on an unpublished opinion that is not entirely persuasive. *See Kelly v. Cavalry Portfolio Servs. LLC*, No. 47941-9-II,

*Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011) (noting as well that "[online] consumers do not read every word on a webpage and [the Federal Trade Commission] advises advertisers that they must draw attention to important disclosures to ensure that they are seen"). Even still, a representation that does not "hid[e] the ball in any way," *HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1187 (E.D. Wash. 2015), is not unfair or deceptive—despite the impact that those terms may have on the consumer—because "[p]erfection is not the standard," *Keithly*, 764 F. Supp. 2d at 1269.

Plaintiffs unconvincingly argue there are three ways that Amazon engaged in an "unfair or deceptive" act or practice as alleged in the First Amended Complaint: (1) by breaching its contract and the duty of good faith, (2) by representing that it would provide Rapid Delivery, and (3) by not representing that it could suspend Rapid Delivery without notification or refund in order to "compete against other companies, including grocery and

---

2016 WL 7468227, at *4 (Wash. Ct. App. Dec. 28, 2016). Other Washington cases suggest that the "least sophisticated" standard is properly applied to claims under the WCPA. *See, e.g., Panag*, 204 P.3d at 895 (including as part of its overview of the proper standards in a WCPA case that the court "look *not* to the most sophisticated readers *but rather to the least*" (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985) (emphasis added)). Because plaintiffs cannot even satisfy the "least sophisticated" standard, we assume without deciding that this lower threshold is the proper standard under Washington law.

pharmacy companies" and "promote sales with higher profit margins."

The first argument has already been addressed. Amazon did not breach its contract or the duty of good faith. Thus, we turn to plaintiffs' second and third arguments. In essence, both arguments are that "the least sophisticated consumer" was "likely to [be] misl[ed]" by the contract's terms.

While the contract contained a large amount of text and in some cases required reference to other terms (via hyperlink), the critical provisions would not deceive a "substantial portion of the public" even if the "least sophisticated" consumer is the benchmark. *Hangman Ridge*, 719 P.2d at 535; *Panag*, 204 P.3d at 895. Amazon's discretionary authority to suspend Rapid Delivery was made exceedingly clear from the outset. The provisions that outline this discretion were easy to understand. Two of the most important provisions—concerning Amazon's power to alter subscribers' memberships and emphasizing that its services were provided on an "AS IS" and "AS AVAILABLE" basis—were emphasized in all caps. This set of facts in no way resembles "hid[ing] the ball" because the provisions were easily accessible and straightforward; as such, they would not deceive a "substantial portion" of the public. *HB Dev.*, 86 F. Supp. 3d at 1185, 1187 (holding that "[t]here [was] no evidence that [defendants] hid the ball" because the pertinent language was presented clearly and defendants did not neglect to disclose critical information). For these reasons, Amazon's representations were not "unfair" or

"deceptive."[14]  *See, e.g.*, *Keithly*, 764 F. Supp. 2d at 1269 ("Perfection is not the standard . . . .").

Simply put, plaintiffs have not sufficiently alleged that Amazon engaged in "unfair or deceptive" business practices under Washington law.  This conclusion alone defeats plaintiffs' WCPA claim because they cannot satisfy each of the five required elements.  Even so, we proceed to another element to emphasize that plaintiffs' claim is doubly deficient.

2.    Public Interest Impact

To succeed on a WCPA claim, plaintiffs must also demonstrate a "public interest impact."  *Hangman Ridge*, 719 P.2d at 533, 537 (emphasizing the WCPA's focus of "protect[ing] the general public").  This element may be satisfied in multiple ways, *id.* at 538, but the Washington legislature has instructed that "this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest," Wash. Rev. Code Ann. § 19.86.920.  Plaintiffs argue that Amazon's suspension of Rapid Delivery was a breach that affected "millions" of people such that it affected the public interest.  Plaintiffs' argument is paradoxical.  Essentially, plaintiffs contend that by

---

[14] To the extent that plaintiffs' third argument (that Amazon did not represent that it could suspend Rapid Delivery to concentrate on groceries and pharmaceuticals) includes their contention that the district court erred by considering the realities of COVID-19, we have already found that argument meritless.

suspending Rapid Delivery to prioritize essential goods at the outset of the COVID-19 pandemic, Amazon harmed the public interest. As we have explained, we are allowed to use our "experience and common sense" to acknowledge the COVID-19 pandemic even though it was not included as a factual allegation in the First Amended Complaint. *See Iqbal*, 556 U.S. at 679. We need only common sense to dispense with this argument because Amazon's prioritization of essential goods during the COVID-19 pandemic obviously did not harm the public interest.[15]

For the reasons above, we hold that the district court was correct to dismiss plaintiffs' WCPA claim.

### D. Unjust Enrichment

Plaintiffs' claim that Amazon was unjustly enriched because it received plaintiffs' subscription fees without conferring the benefit of Rapid Delivery is a non-starter. Washington law is clear that unjust enrichment is appropriate only absent a contract. *See Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) ("Unjust enrichment is the method of recovery for the value of the benefit retained *absent any contractual relationship* . . . ." (emphasis added)); *see also Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1190–91 (W.D. Wash. 2019) ("Under Washington law . . . [w]here a valid contract governs the rights and obligations of the parties, unjust

---

[15] Plaintiffs also face obstacles on the injury and causation elements. It is unnecessary to address these issues given plaintiffs' failure to satisfy the preceding elements.

enrichment does not apply."). Plaintiffs, however, specifically incorporated the terms of their contract with Amazon as part of their unjust enrichment count. So, while plaintiffs may plead breach of contract and unjust enrichment in the alternative, *see, e.g.*, Fed. R. Civ. P. 8(d)(2)–(3), they have not done so. Instead, plaintiffs pleaded a contractual relationship as part of their unjust enrichment claim, and that contractual relationship defeats their unjust enrichment claim under Washington law.[16] *Young*, 191 P.3d at 1262; *see also Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022) ("[A] party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count.").

## IV.    Conclusion

Plaintiffs ask us to ignore the plain meaning of the contract they agreed to, forget the worldwide effect of the COVID-19 pandemic, and reverse the district court's dismissal. We decline their request.

Accordingly, we affirm the district court's dismissal of plaintiffs' First Amended Complaint for failure to state a claim with prejudice.

**AFFIRMED.**

---

[16] To the extent plaintiffs argue there was not an enforceable contract (unconscionability), we have already dispensed with that argument.